UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

2014 DEC -2  P 1: 58

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT

| | |
|---|---|
| DARRYL E. CROMPTON, | ) |
| | ) |
| Plaintiff; | ) **CIVIL COMPLAINT** |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| TUSKEGEE UNIVERSITY; | ) 3:14-CV-1189-WHA-CSC |
| MATTHEW JENKINS, D.V.M. | ) |
| individually; RETIRED GENERAL | ) |
| CHARLES WILLIAMS, individually;) | |
| and BRIAN JOHNSON, Ph.D. in his ) | |
| official capacity as Tuskegee | ) |
| University President. | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Wayne Morse
WALDREP STEWART
& KENDRICK, LLC
2323 Second Avenue North
Birmingham, AL 35203
Direct Dial: 205.327.8325
Cell: 205.616.4539
Fax: 205.324.3802

*Attorney for Plaintiff*

## TABLE OF CONTENTS

NATURE OF ACTION ................................................................... 1

PARTIES ...................................................................................... 2

    A.   The Plaintiff ...................................................................... 2

    B.   The Defendants ................................................................. 2

JURISDICTION AND VENUE .................................................... 3

FACTUAL ALLEGATIONS ......................................................... 4

    A.   Darryl Crompton's Background ....................................... 4

    B.   Mr. Crompton Begins Employment by the University ............... 5

    C.   The University's Termination of Mr. Crompton's Employment ............................................................... 7

    D.   The University Staff and Faculty Handbooks ................. 9

FIRST CAUSE OF ACTION: DECLARATION OF RIGHTS AND INJUNCTION ........................................................................ 12

SECOND CAUSE OF ACTION: BREACH OF EXPRESS CONTRACT ........................................................................... 14

THIRD CAUSE OF ACTION:  BREACH OF IMPLIED CONTRACT..... 15

FOURTH CAUSE OF ACTION: FRAUD – MISREPRESENTATION .... 15

FIFTH CAUSE OF ACTION: FRAUD – SUPPRESSION ......................... 17

SIXTH CAUSE OF ACTION: TORTIOUS INTERFERENCE ................... 19

SEVENTH CAUSE OF ACTION:  PROMISSORY ESTOPPEL ................ 20

EIGHTH CAUSE OF ACTION:  CONSPIRACY ...................................... 22

i

NINTH CAUSE OF ACTION: FRAUD – MISREPRESENTATION .......... 23

TENTH CAUSE OF ACTION: FRAUD – SUPPRESSION ....................... 24

PRAYER FOR RELIEF ................................................................................. 24

JURY DEMAND ........................................................................................... 25

## NATURE OF ACTION

This civil action for damages, a declaration of rights, and an injunction arises from breach of contract, fraud, promissory estoppel, and conspiracy by Tuskegee University, Dr. Matthew Jenkins, Retired General Charles Williams, and Dr. Brian Johnson. For decades, the University has held itself out as a model of equality, honesty, and integrity. The University claims to stand for values it fails to practice. The University's unlawful treatment of Darryl Crompton, former Vice President and General Counsel, demonstrates its disregard for those basic values.

The University's duplicity became a harsh reality for Mr. Crompton when his employment was terminated without cause in June 2014. Mr. Crompton has a 5-year renewable employment contract as Vice President and General Counsel that also provides Mr. Crompton with an unlimited tenured faculty position. Under that contract, Mr. Crompton was guaranteed due process prior to termination. When his employment was terminated, Tuskegee University and its Presidents, past and present, ignored the University's contractual and legal obligations and intentionally disregarded Mr. Crompton's due process rights as an employee and tenured faculty member. This lawsuit is brought to redress the University's unlawful actions.

1

## PARTIES

### A.  The Plaintiff

1.  Plaintiff Darryl E. Crompton is a citizen and resident of the District of Columbia. He was an employee of Tuskegee University from 2011 to 2014.

### B.  The Defendants

2.  Defendant Tuskegee University is a private four-year institution of higher education operating in the Middle District of Alabama in Tuskegee, Alabama. The University was Mr. Crompton's employer and is an "employer" under federal and Alabama law.

3.  Defendant Matthew Jenkins, D.V.M., who is sued individually, is a resident and citizen of California. Dr. Jenkins was the acting President of Tuskegee University between October 2013 and June 14, 2014 and was instrumental in the decision to terminate Mr. Crompton's employment.

4.  Defendant Retired General Charles Williams, who is sued individually, is a resident of Sterling, Virginia. Retired General Williams is the Chair of Tuskegee University's Board of Trustees and was also instrumental in recruiting Mr. Crompton to become Tuskegee University Vice President of Governmental Affairs, General Counsel, and a tenured professor.

2

5.     Defendant Brian Johnson, Ph.D., who is sued in his official capacity, is a resident and citizen of Alabama. Mr. Johnson is the President of Tuskegee University. Mr. Johnson became Tuskegee University President on June 15, 2014, ten days after Mr. Crompton was terminated, and has continued to deny Mr. Crompton due process guaranteed by the University and his contractual rights.  Dr. Johnson is empowered as President of the University to reinstate Mr. Crompton to his employment as the University's Vice President for Legal Affairs and General Counsel, to pay Mr. Crompton the compensation and employment benefits due under the employment contract, to reinstate Mr. Crompton to his tenured faculty position, and to grant Mr. Crompton his due process rights under the Staff and Faculty Handbooks.  Dr. Johnson has failed to do so.

JURISDICTION AND VENUE

6.     This Court has original jurisdiction over Mr. Crompton's state law claims under 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds the $75,000 jurisdictional limit, exclusive of interest and costs.

7.     Venue is proper in the Middle District of Alabama under 28 U.S.C. §§ 1391(b)(1), (2), and (3), because most of the Defendants reside and may be found in the Middle District of Alabama and a substantial part of the

3

events establishing these claims occurred in the Middle District of Alabama.

## FACTUAL ALLEGATIONS

A.    Darryl Crompton's Background

8.    Mr. Crompton earned an undergraduate degree from University of California-Los Angeles, a law degree from University of California-Davis, a master's degree in public health from Yale University, and has been a member of the Alabama State Bar since 1981.

9.    Mr. Crompton was a tenured associate professor of healthcare law at the University of Alabama at Birmingham and taught masters and doctoral level classes in healthcare law and policy, public health law, bioethics, and global health law from 1976 until 1989.

10.    Mr. Crompton first arrived at Tuskegee University in 2000, where he served as a part-time Senior Bioethics Fellow. Mr. Crompton supported the policy work of Tuskegee's Center for Bioethics in Research and Health Care, and wrote grant proposals regarding minority health disparities and ethics, end-of-life care, and ethics leadership training, all totaling more than $10 million dollars of funded grants.

11.    In 2007, Mr. Crompton became the Director for the Institute for International Public Policy at the United Negro College Fund. He directed an alliance of higher education institutions and non-profit organizations that

4

created and funded international study and training opportunities in foreign affairs for minority college students. Mr. Crompton was recruited and hired by the University because of these skills and experience developing and negotiating contracts with participant universities.

**B.**    Mr. Crompton Begins Employment by the University

12.    While working as a law and policy consultant, Mr. Crompton was recruited to work at the University by its former President, Dr. Gilbert Rochon, and the Chairman of the Board of Trustees, Retired General Charles Williams.

13.    Dr. Rochon offered Mr. Crompton the job of Vice President for Governmental Affairs and University Counsel on February 5, 2011 under a five-year renewable employment contract. (A copy of the contract is attached as Exhibit A.)

14.    The five-year renewable contract, dated February 5, 2011, also provided for Mr. Crompton's appointment as a tenured associate professor. He was later assigned to the College of Veterinary Medicine.

15.    Mr. Crompton accepted the University's employment offer, left a lucrative consulting practice, and moved to Tuskegee based on the representations of the University through Dr. Rochon and Retired General Williams.

5

16.   Mr. Crompton began his employment with the University on February 7, 2011. The University's website described Mr. Crompton's appointment and highlighted his background and achievements:

> Attorney Crompton has over 35 years (sic) experience as a professor, lawyer, public health expert and administrator in the higher education, for profit and non-profit sectors. His program management, teaching, research, government affairs, public policy and public health work has focused on the federal, state and local health department regulation of healthcare delivery systems; hospitals; healthcare access; healthcare coverage; health disparities; ethics; and the legislative process, particularly related to vulnerable populations, the poor and underserved communities.
>
> At earlier stages in his career, Crompton served as associate professor of healthcare law and policy at the University of Alabama Birmingham; staff in the U.S. House of Representatives; staff in the California Assembly and Senate; senior director of the Catholic Health Association; fellow for the Pan American Health Organization; fellow for the Tuskegee University National Center for Bioethics in Research and Health Care; and recently, as director of the Institute for International Public Policy at the United Negro College Fund Special Programs Corporation. He has been an adjunct member of the faculties at Morehouse School of Medicine and Howard University School of Medicine.

17.   In November 2011, Mr. Crompton was promoted from Vice President for Governmental Affairs and University Counsel to Vice President for Legal Affairs and General Counsel.

18.   Mr. Crompton served without incident until his termination.

C.      The University's Termination of Mr. Crompton's Employment

19.     On May 31, 2014, Dr. Jenkins sent Mr. Crompton an email requesting all active case files and a summary of each case. Subsequently on June 4, 2014, Dr. Jenkins summoned Mr. Crompton to his office. An attorney, who was not a Tuskegee employee, was present in Dr. Jenkins' office. Dr. Jenkins instructed Mr. Crompton to give the files and case summaries to the attorney and to meet in a conference room to brief that attorney on the status of each case.

20.     Mr. Crompton and the attorney discussed the cases. If the attorney did not recognize the names of retained counsel, the attorney asked Mr. Crompton whether retained counsel was white, and why Mr. Crompton had used white attorneys rather than the attorney's firm of predominantly African American attorneys.

21.     The following day, on June 5, 2014, Mr. Crompton again met with Dr. Jenkins who handed him a letter, stating that the University had terminated his employment. (A copy of the letter terminating Mr. Crompton's employment is attached as Exhibit B.) Dr. Jenkins did not provide a reason for Mr. Crompton's termination of employment. In the letter Dr. Jenkins stated, "Members of my team will meet with you to reach an equitable resolution of your contract." This meeting was attended by the same attorney

7

who met with Mr. Crompton the previous day, and by the attorney's son, a partner in his law firm.

22.    Dr. Jenkins then instructed Mr. Crompton to meet with the attorney and his son in a conference room to work out a settlement, stating that he (Jenkins) would be "fair." Once inside the conference room, the attorney stated to Mr. Crompton, "Had you used me during the last eighteen months, none of this would be happening to you." Immediately following that statement, the attorney again questioned Mr. Crompton about which white attorneys Mr. Crompton had retained, why he had retained them, and what rates they charged. The attorney then discussed the terms of Mr. Crompton's employment contract, but failed to offer a resolution.

23.    By letter dated June 17, Mr. Crompton notified the newly appointed President of the University, Dr. Brian Johnson, and other University officials, that the University Staff and Faculty Handbooks guaranteed Mr. Crompton due process protections, prior warnings, and notice before termination of employment. Mr. Crompton informed Dr. Johnson that his legal rights under his employment contract had been violated and he had received none of the protections afforded to him under the Staff and Faculty Handbooks.

24.    By letters dated June 26, 2014, and July 7, 2014, Mr. Crompton

8

notified the following University officials of his request for hearings on his discharge as Vice President for Legal Affairs, General Counsel, and tenured professor: Dr. Brian Johnson (President), Dr. Walter Hill (Provost), Dr. Stephen Lonis-Shumate (President of the Faculty Senate), and Chairman of the Board Charles E. Williams.

25.    The University never provided Mr. Crompton with a staff or faculty hearing or other due process guaranteed by the University. Instead, the University continued its denial of due process. The University ratified its earlier fraud and suppression regarding Mr. Crompton's rights under the University Staff and Faculty Handbooks, employment contract, and status as a tenured faculty member, Vice President and General Counsel. Rather, acting in bad faith, the University falsely represented Mr. Crompton did not have tenure.

26.    The University and Dr. Jenkins falsely represented, either intentionally or recklessly, that an "equitable resolution" of Mr. Crompton's employment contract would be made.   The University has not made an "equitable resolution" of his employment contract, has not even attempted to do so, and has not acted in good faith to reach an "equitable resolution."

D.    The University Staff and Faculty Handbooks

27.    The University Staff Handbook creates an implied employment

9

contract with its employees, including Mr. Crompton by providing:

    **4.** Disciplinary action involving withholding of salary increases, suspension, demotion or termination of services is accomplished, upon the recommendation of the department head and with approval of the Director of Human Resources Management, as follows:

    **18.41** The department head furnishes the employee and the Director of Human Resources Management a statement in writing, setting forth (a) reason(s) for the action taken; (b) corrective action needed by the employee; (c) inclusive dates of action; and for cases other than termination; (d) that more severe discipline may result in case of recurrence.

    **18.42** The employee has the right to answer such charges in writing within <u>seven</u> working days.

    **18.43** The Director of Human Resources Management considers any replies and makes such investigations as are deemed necessary.

    If appeal is desired by either party, this will be done in accordance with section <u>19.</u> <u>GRIEVANCES.</u>

    **5.** <u>Fifteen calendar days' notice</u> of discharge/termination of services is normally given but this period may be reduced or waived in extreme cases with the concurrence of the Director of Human Resources Management. The notice period may be paid in full with attendance at work not required.

28.    The University did not provide Mr. Crompton with an opportunity to answer or to appeal the decision to terminate his employment.

29.    To date, the University has failed and refused to provide a

reason for Mr. Crompton's termination of employment.

30. The University Faculty Handbook created an implied contract with its faculty, including Mr. Crompton by providing:

> **No faculty member may be finally dismissed for cause without an opportunity for a hearing under due process,** and following that, exhaustion by the faculty member of the right to appeal an adverse decision under procedures established by this section.
>
> ....
>
> The burden of proof in establishing cause for dismissal rests upon the University. **A faculty** member against whom dismissal proceedings have been initiated **has the right to a prompt hearing consistent with the University's grievance and procedures.**
>
> ....
>
> Any member of the Tuskegee University faculty may bring a grievance, as defined below, before the appropriate committee of the Faculty Senate (called hereinafter, the Grievance Committee). Grievances must be presented in writing within fifteen (15) working days after the faculty member knew or by reasonable diligence could have known of the facts giving rise to the grievance....The request for a hearing should be in writing and transmitted directly to the chair of the Faculty Senate with copies to the Provost and the President.

(Emphasis added.)

31. The University did not provide Mr. Crompton with an opportunity to answer or to appeal the decision to terminate his employment.

32. To date, the University has failed and refused to provide a reason for Mr. Crompton's termination of employment.

11

## FIRST CAUSE OF ACTION:
## DECLARATION OF RIGHTS AND INJUNCTION
### (28 U.S.C. § 2201 and Ala. Code § 6-6-223)
### (Against Tuskegee University)

33.   Plaintiff Crompton incorporates paragraphs 1-31 of the complaint as paragraph 32 of the complaint.

34.   A justiciable controversy has arisen between Mr. Crompton and Tuskegee University regarding his rights and Tuskegee University's obligations under the written contract between them, including: (a) Mr. Crompton's status as a tenured faculty member; (b) Mr. Crompton's contractual right to receive compensation and employment benefits as a Vice President and General Counsel and faculty member; (c) Mr. Crompton's right to reinstatement to the faculty; (d) Mr. Crompton's right to a hearing and due process guaranteed by the University Staff and Faculty Handbooks.

35.   In Mr. Crompton's employment contract dated February 5, 2011, University President Rochon offered Mr. Crompton employment with the University:

> I am indeed delighted to inform you of your selection as Vice President for Governmental Affairs and University Counsel for Tuskegee University, at a starting annual salary of $110,000, effective February 7, 2011, under a five year renewable contract. It is also our intention to honor your existing faculty rank and tenure status, as conferred by the University of Alabama at Birmingham.

36.   The contract also described Mr. Crompton's governmental

12

affairs, legal, and academic job responsibilities, and employment benefits such as health insurance, contributions to a retirement account, long-term disability and life insurance, and subsidized rent.

37.     Mr. Crompton accepted the offer and began employment with Tuskegee University.

38.     In June 2014, before the end of the first term of the employment contract, the University terminated Mr. Crompton's employment without cause.

39.     Mr. Crompton seeks a declaration:

- that he is entitled to tenure, all compensation and employment benefits as a tenured faculty member;

- that he is entitled to an injunction reinstating him to the University faculty and continued employment until his retirement;

- that he is entitled to compensation and employment benefits for the remaining term of his employment contract as a Vice President and General Counsel;

- that he is entitled to all unpaid compensation and employment benefits and prejudgment interest from the date of the University's breach of contract;

- that he will receive such other relief the Court deems appropriate.

40.     Mr. Crompton seeks a "speedy hearing" on the declaration of rights and obligations, which a Court may grant under Federal Rule of Civil

13

Procedure 57.

## SECOND CAUSE OF ACTION:
### BREACH OF EXPRESS CONTRACT
(Against Tuskegee University)

41. Plaintiff Crompton incorporates paragraphs 1-39 of the complaint as paragraph 40 of the complaint.

42. Mr. Crompton had an express written contract for continued employment as Vice President for Legal Affairs and General Counsel for a term of at least five years.

43. The University breached its employment contract with Mr. Crompton by terminating his employment without cause with almost two years remaining in his five-year employment contract.

44. The University further breached its employment contract with Mr. Crompton by denying him the right to answer any charges against him, and denying Mr. Crompton the right to appeal.

45. Because of the University's breach of the written contract for continued employment as Vice President for Legal Affairs and General Counsel for a term of at least five years, Mr. Crompton has suffered economic and emotional harm. He lost his job at the University and his livelihood. He was caused to move. He has suffered emotional distress.

## THIRD CAUSE OF ACTION:
## BREACH OF IMPLIED CONTRACT
(Against Tuskegee University)

46.    Plaintiff incorporates paragraphs 1-44 of this complaint as paragraph 45 of the complaint.

47.    Mr. Crompton had a contract for continued employment as a tenured professor in the College of Veterinary Medicine.

48.    The University breached its employment contract with Mr. Crompton by terminating his employment without cause despite his status as a tenured professor.

49.    The University further breached its employment contract with Mr. Crompton by denying him the right to answer any charges against him, and denying Mr. Crompton the right to appeal.

50.    Because of the University's breach of its implied contract for continued employment as a tenured professor in the College of Veterinary Medicine, Mr. Crompton has suffered economic and emotional harm. He lost his job at the University and his livelihood. He was caused to move. He has suffered emotional distress.

## FOURTH CAUSE OF ACTION:
## FRAUD – MISREPRESENTATION
(Against Tuskegee University and Retired General Charles Williams)

51.    Plaintiff Crompton incorporates paragraphs 1-49 of this

15

complaint as paragraph 50 of the complaint.

52.     In February 2011, Mr. Crompton was living in Washington, D.C. and was lucratively working as a law and policy consultant. He was recruited to work for the University as the Vice President for Governmental Affairs and University Counsel and as a tenured professor in the College of Veterinary Medicine.

53.     The University, through its agents Dr. Rochon and Retired General Williams, made false representations to Mr. Crompton. These false representations were made in writing in February 2011, and were made intentionally, recklessly, negligently, or innocently. These false representations included:

> a.     Mr. Crompton would be hired under a five-year renewable contract as the Vice President for Governmental Affairs and University Counsel for the University.

> b.     The University would honor Mr. Crompton's existing faculty rank and tenure status as conferred by the University of Alabama at Birmingham.

> c.     The burden of proof in establishing cause for dismissal rests upon the University. A faculty member against whom dismissal proceedings have been initiated has the right to a prompt hearing consistent with the University's grievance policies and procedures.

54.     These representations were ratified by the University after Dr. Rochon and Retired General Williams reviewed Mr. Crompton's resume and offered him the job.

55.    Mr. Crompton relied upon the University's agents, left gainful employment, and moved to Tuskegee. With almost two years left in Mr. Crompton's five-year contract his employment was terminated. The letter terminating his employment provided no reason for Mr. Crompton's termination of employment and to date, Mr. Crompton has not been provided with cause for his termination of employment.

56.    On June 5, 2014, Mr. Crompton discovered these fraudulent representations when his employment was terminated. The University never intended to fulfill its representations. His employment was terminated by the University without cause or due process.

57.    Because of the University's fraudulent misrepresentations, Mr. Crompton has suffered economic and emotional harm. He left a lucrative law and policy consulting practice. He was subjected to retaliation for deciding to use white lawyers. He has lost his job and his livelihood. He was caused to move. He has suffered emotional distress.

### FIFTH CAUSE OF ACTION:
### FRAUD – SUPPRESSION
(Against Tuskegee University and Retired General Charles Williams)

58.    Plaintiff Crompton incorporates paragraphs 1-56 of this complaint as paragraph 57 of the complaint.

59.    In February 2011, Mr. Crompton was living in Washington,

17

D.C. and working as a law and policy consultant. He was recruited to work for the University as the Vice President for Governmental Affairs and University Counsel and as a tenured professor in the College of Veterinary Medicine. Before accepting the job, Mr. Crompton interviewed with, among others, the University's President, Dr. Rochon.

60.    The University, through its agents Dr. Rochon, Retired General Williams, and others suppressed material facts from Mr. Crompton. Suppression of these material facts was done intentionally, recklessly, negligently, or innocently. The material facts suppressed included:

a.    Mr. Crompton's five-year contract and tenured status could be ignored and Tuskegee University could terminate him without providing him with any cause for dismissal.

b.    The fact that Mr. Crompton's decisions to use some non-minority law firms could be grounds for termination of Mr. Crompton's employment.

c.    Tuskegee University was in financial trouble and could not afford to pay Mr. Crompton or provide him with stable, long term employment.

61.    These suppressions were ratified by Tuskegee University after Dr. Rochon and Retired General Williams, reviewed Mr. Crompton's resume and offered him the job.

62.    Mr. Crompton relied upon the University's agents, left gainful employment, and moved to Tuskegee. With almost two years left in Mr.

18

Crompton's five-year contract his employment was terminated. The letter terminating his employment provided no reason for Mr. Crompton's termination of employment and to date, Mr. Crompton has not been provided with cause for his termination of employment.

63.     On June 5, 2014, Mr. Crompton discovered these suppressed material facts when his employment was terminated. The University never intended to fulfill its representations. His employment was terminated by the University without cause or due process.

64.     Because of the University's fraudulent suppressions, Mr. Crompton has suffered economic and emotional harm. He left a lucrative job as a law and policy consultant. He was subjected to retaliation for deciding to use white lawyers. He has lost his job and his livelihood. He was caused to move. He has suffered emotional distress.

### SIXTH CAUSE OF ACTION:
### TORTIOUS INTERFERENCE
(Against Dr. Matthew Jenkins)

65.     Plaintiff Crompton incorporates paragraphs 1-63 of this complaint as paragraph 64 of the complaint.

66.     Mr. Crompton had an employment relationship with the University and an implied contract of continued employment arising out of the University's Staff and Faculty Handbooks.

19

67.    Mr. Jenkins acted outside of his authority as an officer and agent of the University: (a) by terminating Mr. Crompton's employment without an opportunity to be heard, to answer any charges against him, and to appeal the termination of his employment, all in violation of Mr. Crompton's rights under the Staff and Faculty Handbooks; and (b) by terminating Mr. Crompton's employment contract without cause as a tenured faculty member, Vice President of Legal Affairs, and General Counsel. In each instance, Mr. Jenkins' conduct was affirmative, intentional, knowing, malicious, unjustified or unlawful interference with Mr. Crompton's rights under Alabama law and the University's Staff and Faculty Handbooks.

68.    Because of Dr. Jenkins' tortious interference with Mr. Crompton's employment relationship and implied continued contractual rights under the University Staff and Faculty Handbooks, Mr. Crompton has suffered economic and emotional harm. He has lost his job at the University and his livelihood. He was caused to move. He has suffered emotional distress.

### SEVENTH CAUSE OF ACTION:
### PROMISSORY ESTOPPEL
(Against Tuskegee University)

69.    Plaintiff Crompton incorporates paragraphs 1-68 of this complaint as paragraph 69 of the complaint.

20

70.    The University, through its agents Dr. Rochon and Retired General Williams promised Mr. Crompton he could be employed as Vice President for Government Affairs and University Counsel for a term of at least five years, and that the University would honor his existing faculty rank and tenure status as conferred by the University of Alabama at Birmingham.

71.    The University, through its Staff and Faculty Handbooks, made numerous promises to Mr. Crompton, including that Mr. Crompton would not be disciplined or have his employment terminated without an opportunity to answer the charges against him and an opportunity to appeal an adverse decision.

72.    The University, and its agents, Dr. Rochon and Retired General Williams and others should have reasonably expected to induce Mr. Crompton's action or forbearance, i.e., to leave lucrative employment doing consulting work in Washington, D.C., to accept the University's employment, to move to Alabama, to forgo other employment opportunities, and to remain a University employee.

73.    Unless the promises of the University and its agents are enforced, an injustice will be done.

74.    Because of the promises of the University and its agents, Mr. Crompton has suffered economic and emotional harm. He has lost his job at

21

the University and his livelihood. He was caused to move. He has suffered emotional distress.

## EIGHTH CAUSE OF ACTION:
## CONSPIRACY
(Against Tuskegee University, Dr. Matthew Jenkins
and Retired General Charles Williams)

75.     Plaintiff Crompton incorporates paragraphs 1-74 of this complaint as paragraph 75 of the complaint.

76.     Beginning in October 2013, the University, Dr. Jenkins, and Retired General Williams acting individually and in concert engaged in acts that attempted to and prevented Mr. Crompton from receiving his contractual and other rights under federal and state law. At all times, Dr. Jenkins and Retired General Williams were agents of the University. These acts also caused Mr. Crompton to suffer injury and damage from the fraud, suppression, deceit, breach of contract, promissory estoppel, and tortious interference described in this complaint.

77.     The University, Dr. Jenkins, Retired General Williams and others violated Alabama law by conspiring to terminate Mr. Crompton's employment without cause. This conspiracy caused him to suffer emotional harm, and diminished his professional posture at the University.

78.     The University and Dr. Jenkins' actions directly and proximately caused and continue to cause Mr. Crompton to suffer loss of income and

22

other financial benefits, damage to his professional reputation, emotional distress, anguish, pain and suffering, humiliation, and personal embarrassment.

### NINTH CAUSE OF ACTION:
### FRAUD – MISREPRESENTATION
(Against Tuskegee University and Dr. Matthew Jenkins)

79.    Plaintiff Crompton incorporates paragraphs 1-78 of this complaint as paragraph 79 of the complaint.

80.    In June 2014, Mr. Crompton was employed by the University and working as Vice President for Legal Affairs and General Counsel.

81.    The University, through its agent Dr. Jenkins, made a false representation to Mr. Crompton. This false representation was  made in writing in in Mr. Crompton's termination letter dated June 5,2014,  and was made intentionally, recklessly, negligently, or innocently. The false representation was that the University would make an "equitable resolution" of Mr. Crompton's employment contract.

82.    Mr. Crompton relied upon the University's agent and moved to the District of Columbia.  He has suffered a loss of income and employment benefits.  He has suffered economic and emotional harm.

23

## TENTH CAUSE OF ACTION:
## FRAUD – SUPPRESSION
### (Against Tuskegee University and Dr. Matthew Jenkins)

83. Plaintiff Crompton incorporates paragraphs 1-82 of this complaint as paragraph 83 of the complaint.

84. In June 2014, Mr. Crompton was employed by the University and working as Vice President for Legal Affairs and General Counsel.

85. The University, through its agent Dr. Jenkins, suppressed material facts from Mr. Crompton. The University and Dr. Jenkins suppressed that the University had no intention of making an "equitable resolution" of the employment contract between the University and Mr. Crompton.

86. Mr. Crompton relied upon the University's agent and moved to the Tuskegee, Alabama. He has suffered a loss of income and employment benefits. He has suffered economic and emotional harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Darryl Crompton respectfully requests this Court enter judgment against Defendants, the University, Dr. Matthew Jenkins, Retired General Charles Williams, and Dr. Brian Johnson in his favor including:

1. Reinstatement to the position of Vice President for  Legal

24

Affairs and General Counsel, or its equivalent, for the remainder of Plaintiff Crompton's five-year employment contract;

2.     Reinstatement to the position of tenured professor in the College of Veterinary Medicine until his retirement;

3.     An award to Mr. Crompton of economic and compensatory damages, punitive damages, prejudgment interest costs, and attorney fees; and

4.     A declaration of Mr. Crompton's rights and the University's and Mr. Johnson's obligations.

### JURY DEMAND

Plaintiff Darryl Crompton requests a trial by jury on all claims so triable.

DATE:  December 1, 2014.

Respectfully Submitted,

Wayne Morse, Jr.
*Attorney for Plaintiff*

WALDREP STEWART & KENDRICK, LLC
2323 Second Avenue North
Birmingham AL  35203
Telephone:  (205) 254-3216
Facsimile:  (205) 327-8395

**\*\*SERVICE INFORMATION ON FOLLOWING PAGE\*\***

**SUMMONS AND COMPLAINT TO BE
SERVED BY CERTIFIED MAIL AS FOLLOWS:**

Tuskegee University
300 Kresge Center
Tuskegee, AL  36088

Dr. Matthew Jenkins
20 South 13th Place
Long Beach CA 90802

Dr. Brian Johnson
104 Gautier Street
Tuskegee, AL 36083

Ret. General Charles Williams
2 Pidgeon Hill Drive
Sterling VA 20165