IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DARRYL E. CROMPTON,           )<br>                              )<br>    Plaintiff,                 )<br>                              )<br>vs.                           )<br>                              )<br>TUSKEGEE UNIVERSITY,          )<br>et al.,                       )<br>                              )<br>    Defendants.               | CIVIL ACTION NO.:<br><br>3:14-CV-1189-CDL-GMB |

**DEFENDANT TUSKEGEE UNIVERSITY'S MOTION FOR
JUDGMENT AS A MATTER OF LAW AT THE
<u>CLOSE OF ALL EVIDENCE</u>**

Defendant Tuskegee University ("Tuskegee"), pursuant to Fed. R. Civ. P. 50(a), respectfully moves the Court for an order granting judgment as a matter of law in their favor. Tuskegee submits this motion at the conclusion of all evidence at trial, and seeks judgment as a matter of law in its favor on Plaintiff Darryl Crompton's ("Plaintiff's") breach of contract claims. In support of its motion, Tuskegee states as follows:

1.   A reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiff in this case. As a result, no breach of contract occurred.

2.   Plaintiff's breach of contract claims should be dismissed because Tuskegee terminated Plaintiff from his general counsel position for just cause, and Plaintiff was not contractually entitled to due process under Tuskegee's Faculty

Handbook, because he did not have a tenured faculty appointment. Plaintiff also admitted that he did not have a tenured faculty position in the College of Veterinary Medicine as alleged in his complaint and throughout the litigation. He testified that, instead, that he held "university-wide" tenure.

3. Plaintiff did not produce evidence establishing that he is entitled to declaratory relief or reinstatement.

I. **THE COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW BECAUSE PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW.**

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Barrett v. Radjabi-Mougadam*, 39 So. 3d 95, 98 (Ala. 2009) (*quoting Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)). Plaintiff asserts two breach of contract theories: (1) Tuskegee breached Plaintiff's general counsel contract by terminating him without just cause; and (2) he claims he held a tenured appointment as a "university-wide" associate professor that entitled him to pretermination, tenured faculty member due process. Plaintiff's evidence does not establish the essential elements of these claims.

      **A. Tuskegee terminated Plaintiff's general counsel contract for cause.**

Under an employment for a fixed term, an employer can terminate an

employee for cause before the expiration of the contractual period of employment. *Green v. City of Hamilton, Hous. Auth.,* 937 F.2d 1561, 1564 (11th Cir.1991). An implicit term of an employment contract is that the employee shall perform his services satisfactorily. *Bates v. Jim Walter Resources, Inc.,* 418 So. 2d 903 (Ala. 1982); *Alabama Mills, Inc. v. Smith,* 237 Ala. 296, 186 So. 699 (1939).

Plaintiff breached his general counsel contract with Tuskegee by failing to satisfactorily perform his services. This conclusion is supported by the following testimony and evidence: (a) Plaintiff was dishonest about his late and deficient claims reporting to one of Tuskegee's insurers; (b) Plaintiff took a trip to California at Tuskegee's expense for Title IX training and then "reassigned" Title IX responsibility to a peer without the President's approval; and (c) Plaintiff told the President he was directed to take a certain action by the President's boss, which the boss denied. Plaintiff's decision to mislead and circumvent Dr. Jenkins resulted in an irretrievable breakdown of trust, which is essential in any relationship with legal counsel.[1] Further, according to one of Tuskegee's insurance carriers, Plaintiff's conduct—failing to report claims in a timely manner—nearly cost Tuskegee its liability coverage. (*See* Plaintiff's Exhibit 52.) It also resulted in Tuskegee failing to receive credit against its retention for expenditures related to litigation, costing Tuskegee money.

---

[1] *See Patterson v. Powell, Goldstein, Frazer & Murphy, LLP*, 332 B.R. 450, 453 (N.D. Ala. 2005).

Plaintiff stated on the record through counsel that he does not assert a separate breach of contract claim based on an alleged denial of due process. Therefore, the only contract claim related to his general counsel position is whether cause sufficient to justify termination was present.

Based on the evidence presented, no reasonable jury could conclude that Plaintiff was not terminated for cause. Accordingly, Plaintiff's breach of contract claim should be dismissed.

### B. Tuskegee did not owe Plaintiff any due process rights under the Faculty Handbook.

Plaintiff's due process claims relies upon his claim that Tuskegee's Faculty handbook applied to him. The testimony and evidence establish that the due process requirements of the Tuskegee Faculty Handbook did not apply Plaintiff because he was not a tenured faculty member. The plain language of plaintiff's offer letter, the parties' course of dealings, and the objective actions of the parties demonstrate that Plaintiff was not a tenured faculty member. Based on the evidence presented, no reasonable jury could conclude that Plaintiff held a tenured, "university-wide" faculty position or that he was entitled to due process under the Faculty Handbook. Accordingly, Plaintiff's breach of contract claim related to alleged tenured faculty status should be dismissed.

### 1. Because Plaintiff did not have tenure at UAB at the time of his hire, the offer letter does not provide Plaintiff tenure.

Plaintiff's offer letter included a sentence reading, "It is also our intention to honor your *existing* faculty rank and tenure as conferred by the University of Alabama at Birmingham." (Plaintiff's Exhibit 16.) At issue is the meaning of the word "existing." When interpreting the terms of a contract, the Court must "give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state." *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So. 2d 33, 36 (Ala. 1998) (citing *Pacific Enterprises Oil Co. (USA) v. Howell Petroleum Corp.*, 614 So. 2d 409 (Ala. 1993)).[2] Applying the plain meaning rule, "existing" means "current." *Burton's Legal Thesaurus, 4E*. 2007. Other definitions include:

> *The Oxford English Dictionary*, 2nd ed. 1989, existing, adj.: in existence or operation at the time under consideration; current.
>
> *Burton's Legal Thesaurus, 4E*. 2007, existing: current, extant, present.
>
> *MacMillan Dictionary,* American English, definition of existing: in existence or operation at the time under consideration; current
>
> Merriam Webster (*Encyclopedia Britannica*), existing: adjective used for describing something that exists now, especially when it might be changed or replaced; having being at the present time

Using these definitions, *existing UAB tenure* means

- current UAB tenure
- present UAB tenure

---

[2] The fact that a word in a contract is left undefined – like "existing" – does not render it ambiguous. *Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of NY*, 619 F. Supp. 2d 1178, 1186 (S.D. Ala. 2008) (citations omitted) (stating that "ambiguities cannot be conjured from thin air by strained or twisted reasoning," and "the mere fact that a word or a phrase used in a provision in [a contract] is not defined" does not mean that it is "inherently ambiguous").

- UAB tenure in existence at the time under consideration (on February 5, 2011)
- UAB tenure at the present time
- UAB tenure that exists now

Unless it is determined by the court to be ambiguous, a contract's interpretation is a matter of law for the court to decide. *See Black v. Glass,* 438 So.2d 1359, 1367 (Ala.1983).  Because the meaning of the existing tenure was whatever tenure Plaintiff had when he signed his contract.  He signed his contract on February 6, 2011, and on that day, he had no UAB tenure. Pl.'s dep., p. 444:21-24; 445: 1-5. Therefore, on the date of the agreement, Plaintiff had no existing UAB tenure status for Tuskegee to honor.  *Id.*

### 2. Based on the parties' course of dealings, the offer letter did not award tenure

From January 8, 2011 through February 6, 2011, Plaintiff and Tuskegee's former president, Dr. Gilbert Rochon, negotiated terms.  This consisted of several job descriptions and counteroffers, including Dr. Rochon's rejection of Plaintiff's request for a tenured faculty appointment in the College of Veterinary Medicine, Nursing, and Allied Health. The negotiations started when Plaintiff sent Dr. Rochon a proposed job description that included a tenured faculty position. (Plaintiff's Exhibit 8.)  Dr. Rochon rejected it. (Plaintiff's Exhibit 11.)  He sent Plaintiff a counteroffer that omitted the tenured faculty position. (Plaintiff's Exhibit 12.)  Plaintiff responded by requesting changes in his compensation and responsibilities. (Plaintiff's Exhibit 13.) He did not ask Dr. Rochon to add being a faculty member with tenure back to the agreement. (*See id.*). Dr. Rochon sent a

revised offer that declined the request for a change in compensation (other than payment of bar fees) and declined plaintiff's request to change his responsibilities. (Plaintiff's Exhibit 15.) He again did not include tenure in the College of Veterinary Medicine, Nursing, and Allied Health. (*Id.*)  Plaintiff signed this letter. (Plaintiff's Exhibit 16.)

Although he rejected Plaintiff's request for automatic tenure in the College of Veterinary Medicine, Nursing, and Allied Health, Dr. Rochon's counteroffer did include a statement reading, "It is also our intent to honor your existing faculty rank and tenure status as conferred by the University of Alabama at Birmingham." (Plaintiff's Exhibit 13.)  In response, Plaintiff asked Dr. Rochon to increase his compensation and to add being Tuskegee's senior international officer back in to his responsibilities, but he did not ask Dr. Rochon to add a definitive statement that he was a faculty member in the College of Veterinary Medicine, Nursing, and Allied Health with tenure. (Plaintiff's Exhibit 14.)  He also did not ask Dr. Rochon to change the language from intending to honor his "**existing** faculty rank and tenure" to intending to honor his "**former** faculty rank and tenure." Ex. 11 (emphasis added). (Plaintiff's Exhibit 14 (emphasis added)).

On June 20, 2011, Plaintiff was appointed an Adjunct Professor, a non-tenure position.  On July 18, 2011, Plaintiff confirmed his acceptance of the adjunct appointment in a response to Dr. Habtemariam and began using the Adjunct Professor title. (Plaintiff's Exhibits 20, 21.) He also generated many resumes that did not identify him as having tenure. (Plaintiff's Exhibit 97; Defendant's Exhibit 14, 16.) He never complained about being named an adjunct

instead of a tenured faculty member. Based on these facts, the offer plaintiff accepted did not include a tenured faculty position. He proposed it, Dr. Rochon rejected it, and it never became part of his contract. *Hall v. Integon Life Ins. Co.*, 454 So. 2d 1338, 1342 (Ala. 1984) (company's response to agent's offer by redrafting amendments to agency contract constituted a counteroffer that employee subsequently accepted); *Cook's Pest Control, Inc. v. Rebar*, 852 So. 2d 730, 738 (Ala. 2002) (response to offer to renew that contract with substantially different terms gave rise to a counteroffer); *Hardy Corp. v. Rayco Indus., Inc.*, 143 So. 3d 172, 180-81 (Ala. 2013) (same). As such, Plaintiff was not a tenured faculty member.

### 3. **The objective conduct of the parties confirm Plaintiff was not a tenured faculty member.**

The parties' objective conduct shows that Plaintiff was not hired as a tenured faculty member:

* When he received Dr. Rochon's counteroffer, plaintiff did not insist that tenure was a necessary condition of employment; instead, he said he was "perfectly willing to accept and sign the offer letter as is." (Plaintiff's Ex. 14.)

* Plaintiff's Tuskegee bio listed him as general counsel and vice president for legal affairs with an adjunct professor position. (Plaintiff's Ex. 21.) There was no mention of tenure. *See Id.*

* Numerous resumes Plaintiff prepared for Tuskegee (Ex. 26) and third parties (Ex. 27) during his employment make no mention of a tenured faculty position, reading: "I am currently Vice President & General Counsel of Tuskegee University, and was formerly a tenured associate professor of healthcare law and policy at the University of Alabama at Birmingham." (Plaintiff's Exhibit 97; Defendant's Exhibits 14, 16.)

* When Plaintiff was appointed an adjunct professor on June 20, 2011, he did not object even though adjuncts are not eligible for tenure. (Plaintiff's Ex. 20.)

* Plaintiff repeatedly used the adjunct professor title. (Defendant's Ex. 62.)

* Plaintiff never asked Dr. Rochon to convert his adjunct appointment into a tenured position or said "this is not what we discussed." Pl.'s dep., p. 447:7-12; Rochon dep., p. 160:13-21.

* Plaintiff never discussed submitting faculty credentialing information that would show that he should be tenured. Rochon dep., pp. 160:22-23; p. 161:1-2.

* Plaintiff never complained about being appointed to an adjunct professor's position or said that he should have tenure. Pl.'s dep., p. 447:7-12; Rochon dep., p. 160:13-21.

* Plaintiff did not go through the tenure process. Habtemariam dep., p. 50:8-13.

Additional proof that Plaintiff was not awarded tenure can be seen by comparing his offer letter with offer letters sent to two individuals to whom Dr. Rochon did award tenure: Dr. Fitzgerald Bramwell and Dr. Mohammad Bhuiyan. In pertinent part, they read:

> I am pleased to offer you the position of Dean, College of Arts and Sciences, and appointment as a tenured, full professor, Department of Chemistry, at Tuskegee University. This offer is effective July 1, 2012 at salary of $185,000 for the 2012¬2013 fiscal year (July 1, 2012 through June 30, 2013)

(Defendant's Exhibit 6 (excerpted).)

> I am pleased to offer you an appointment as a tenured full Professor of Entrepreneurship, within Tuskegee University's Andrew F. Brimmer

9

> College of Business Administration and Information Technology, as well as an appointment as Vice President for Innovation and Sustainable Development, at a ten-month academic year salary of $135,000 and a two month Summer supplemental salary of $27,000.

(Defendant's Exhibit 4.) A comparison of these documents with Plaintiff's offer letter shows that Dr. Bramwell's and Dr. Bhuiyan's letters expressly stated that they were tenured, their faculty rank (*full professor*), and where they were tenured (*the Department of Chemistry, College of Arts & Sciences* and *the College of Business Administration and Information Technology*). Plaintiff's did not. (See Plaintiff's Exhibit 16.)

The existence of a contract or a promise made part of a contract is determined by the "reasonable meaning of the parties' external and objective manifestations of mutual assent, rather than their uncommunicated beliefs." *Holland v. Continental Tel. Co.*, 492 So. 2d 998, 1000 (Ala. 1986); *see also Nihon Rufuto Co. v. Nidek Med. Prods., Inc.*, 437 F. App'x 782, 789 (11th Cir. 2011) quoting *Smith v. Chickamauga Cedar Co.,* 82 So. 2d 200, 203 (Ala. 1955). As stated in *Smith v. Chickamauga,* "[o]ffers which are originally indefinite may later acquire precision and become valid offers, by the subsequent words or acts of the offeror. . . or acts of the offeree". *Id.* at 203. The course of the parties' dealings demonstrate that Plaintiff was not a tenured faculty member.

### C. There is no proof in the record that Plaintiff submitted information to Tuskegee establishing his UAB faculty rank or tenure status.

Even if the jury could conclude that the letter promised to honor plaintiff's former UAB faculty rank and tenure status after he was hired, there are no facts in the record showing that Plaintiff submitted documentation to Tuskegee

establishing his UAB faculty credentials or any other faculty credentialing information indicating that he should be tenured. He never went through tenure review. Habtemariam dep., p. 50:8-13. Whether an appointment was conditioned on Plaintiff having faculty rank and tenure in 2011 when he was hired, or in 1989, twenty-one years earlier, after he was hired, there is no proof in the record that Plaintiff did his part by providing proof to Tuskegee that he had any UAB faculty rank or tenure for Tuskegee to honor.

### D. Plaintiff and Tuskegee did not reach a meeting of the minds concerning tenure.

It is the law in Alabama that the mutual assent of the parties to the same thing, and in the same sense, is an essential element to every contract. *Baldwin Cnty. v. Purcell Corp.,* 971 F.2d 1558, 1563 (11th Cir. 1992); *In re Bd. of Comm'rs v. Jones,* 291 Ala. 371, 378, 281 So.2d 267, 273 (1973) (per curiam). Accordingly, a contract requires a meeting of the minds regarding the subject matter. *Leisure Am. Resorts, Inc. v. Carbine Constr. Co.,* 577 So.2d 409, 411 (Ala.1990). Plaintiff's offer letter did not offer a faculty salary, specify a faculty salary amount, or grant faculty benefits. The offer letter does not contain the words "associate professor" or "College of Veterinary Medicine, Nursing, and Allied Health." (Plaintiff's Exhibit 16.) The only position the letter commits to is vice president and university counsel. *Id.* The contract is silent as to academic duties (*e.g.,* teaching, research, publications and service) and plaintiff's assigned discipline

11

within the University. *See id.* These are material terms to a faculty agreement. Despite this, Plaintiff is suing for faculty salary and benefits for life.

Because of these omissions, material contract terms were undefined. Therefore, there was no meeting of the minds as to what those terms would be. *See American Viking Contractors v. Scribner Equip. Co.,* 745 F.2d 1365, 1369-70 (11th Cir.1984). Based on the letter itself, as to a tenured faculty position, the parties opened the door to discussion, but did not reach an understanding as to the position's essential terms. *See American Viking Contractors at* 1369-70. There was no meeting of the minds as to the essential elements of a faculty contract or the respective rights and duties of the parties regarding faculty status. *See Southeastern Sand & Gravel Co. v. Newell Road-builders, Inc.,* 282 Ala. 431, 438, 212 So.2d 598, 604 (1968). Therefore, no binding obligation arose. *Id*.

### E. Plaintiff waived any claim for tenure by failing to object when he was appointed to an adjunct position.

In June 2011, Plaintiff learned that he had not received a tenured associate professor appointment when Dr. Habtemariam sent him a letter reading, "you have been appointed, (a priori), as an Adjunct faculty member" (Plaintiff's Exhibit 20.) This was reaffirmed on July 18, 2011, when Dr. Habtemariam confirmed the adjunct appointment and plaintiff thanked him for it. (Defendant's Exhibit 264.) He then began using the Adjunct Professor title. (Plaintiff's Exhibit 21; Defendant's Exhibit 62.) Assuming that Plaintiff was entitled to a tenured

position as an associate professor, he was put on notice that Tuskegee was in breach on June 20, 2011, when he was notified in writing that had named an adjunct instead of a tenured professor. (Plaintiff's Exhibit 20.) Plaintiff received an appointment, which on its face, included no rank, no tenure, and no pay. (*Id.*) If this breached his employment agreement, he should have said so in 2011. By not objecting and by accepting performance that he now alleges failed to meet contractual requirements, he waived the alleged breach.

Parties to a written contract modify or waive a contractual provision by their actions or course of dealings. *Mobile Airport Authority v. Healthstrategies, Inc.*, 886 So. 2d 773, 782 (Ala. 2004). Even if the jury could conclude that Plaintiff had a contract for tenure, tenure was waived.

### F. Assuming Plaintiff had a contract for faculty tenure, he failed to comply with the requirement of good-faith and fair dealing

If Plaintiff had an agreement for a tenured position, he himself breached it by failing to comply with the requirement of good-faith and fair dealing. "[A] party's good-faith cooperation is an implied condition precedent to performance of a contract; where that cooperation is unreasonably withheld, the recalcitrant party is estopped from availing himself of his own wrongdoing." *Burger King Corporation v. Weaver*, 169 F. 3d 1310 (11th Cir, 1999)**.** In this context, good faith cooperation means that if Plaintiff expected Tuskegee to honor his UAB faculty rank and status, he needed to provide proof of that status. He did not. As the

13

recalcitrant party who failed to provide Tuskegee with documentation of **any** UAB faculty rank and tenure status, he is estopped from availing himself of his own wrongdoing by suing Tuskegee for failing to replicate it. *Accord, Id.*

Plaintiff has produced no proof that he provided Tuskegee with verification of his former UAB faculty rank or tenure. As such, he cannot establish that Tuskegee breached an agreement to provide an associate-level faculty appointment with tenure. Even if the court finds that Tuskegee's use of the words *existing* faculty rank and tenure meant *former* faculty rank and tenure, he did not submit any documentation to Tuskegee establishing that he had UAB rank or tenure. Absent plaintiff providing Tuskegee with proof of UAB faculty rank and tenure, Tuskegee was not required to replicate it.

## II. <u>PLAINTIFF IS NOT ENTITLED TO DECLARATORY JUDGMENT</u>

As to his request for declaratory and injunctive relief, this too is due to be dismissed. Plaintiff asks the court for relief that includes "reinstatement" to a faculty position. Specific performance is an equitable remedy. It has long been held that a "court of equity will decree specific performance only when it can dispose of the matter in controversy by a degree capable of present performance. It will not decree a party to perform a continuous duty extending over a series of years, but will leave the aggrieved party to his remedies at law." *Electric Lighting Co. of Mobile v. Mobile & Spring Hill Railway Co.*, 19 So. 721, 723 (Ala. 1896); *see also Ex parte Jim Dandy Company*, 239 So. 2d 545, 549 (Ala. 1970); *George*

*Moulton, Inc. v. Langan*, 233 So. 2d 74, 82 (Ala. 1970). Plaintiff argues that he is entitled to employment as a faculty member for the next 20 years. This relief is not capable of present performance and should be denied. Further a faculty contract requires specialized skill, knowledge, and judgment. Therefore, specific enforcement of such a contract is improper and Plaintiff's remedy is at law only. *See Lorch, Inc. v. Bessemer Mall Shopping Ctr., Inc.*, 310 So. 2d 872, 876 (Ala. 1975); *Hewitt v. Magic City Furniture & Mfg. Co.*, 266, 107 So. 745, 745 (1926).

### III. CONCLUSION

Based on the foregoing, Defendant respectfully requests the Court enter an order granting judgment as a matter of law in its favor.

Respectfully submitted,

*s/ Lisa Karen Atkins*
Lisa Karen Atkins (ASB-3326-i72a)
J. Richard Carrigan (ASB-9760-r54j)
OGLETREE, DEAKINS, NASH,
　SMOAK & STEWART, P.C.
420 20th Street North, Suite 1900
Birmingham, AL  35203
Telephone:  205.328.1900
Facsimile:  205.328.6000
lisa.atkins@ogletreedeakins.com
richard.carrigan@ogletreedeakins.com

*Attorneys for Defendant Tuskegee University*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2017, I hand delivered and/or electronically filed the foregoing using the CM/ECF system, which will automatically send notification of such filing to the following:

Andrew P. Campbell
A. Todd Campbell
Yawanna McDonald
CAMPBELL, GUIN, WILLIAMS
GUY & GIDIERE, LLC
505 20th Street North, Suite 1600
Birmingham, AL  35203
andrew.campbell@campbellguin.com
todd.campbell@campgellguin.com
yawanna.mcdonald@campbellguin.com,

           *s/Lisa Karen Atkins*
           Of Counsel